UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVORY J. VALENTINE, | No. C 09-4586 MHP (pr) |
| Petitioner, | **ORDER OF DISMISSAL** |
| v. | |
| Warden CURRY, | |
| Respondent. | |

## INTRODUCTION

Ivory J. Valentine, an inmate at the Correctional Training Facility in Soledad, filed this pro se action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court reviewed his petition and dismissed it with leave to amend. His amended petition is now before the court for review pursuant to 28 U.S.C. §2243 and Rule 4 of the Rules Governing Section 2254 Cases.

## DISCUSSION

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court considering a petition will "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

A.    Claim For Failure To Remove Documents From Prison Records

In his amended petition, Valentine claims that prison officials failed to remove from his central prison file a rule violation report.   According to Valentine, he received the December 12, 2004 rule violation report for mutual combat.  The disciplinary charge later was dismissed.  Thereafter, he requested that prison officials remove from his prison file the documentation related to the rule violation report that had been dismissed.  He alleges that prison officials granted his request in an inmate appeal to remove the documentation from his file, but then did not remove the documentation.

Interests that are procedurally protected by the Due Process Clause may arise from two sources: the Due Process Clause itself and laws of the states.  See Meachum v. Fano, 427 U.S. 215, 223-27 (1976).  In the prison context, these interests are generally ones pertaining to liberty.  Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law.  See Sandin v. Conner, 515 U.S. 472, 484 (1995) (citing Vitek v. Jones, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and Washington v. Harper, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)).  Plaintiff's is not a case involving changes so severe as to implicate the Due Process Clause itself.

Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation and that the liberty in question is one of "real substance." See id. at 477-87.  A state most commonly restricts the power of prison officials by establishing "substantive predicates" to govern official decisionmaking, i.e., "particularized standards or criteria to guide the [s]tate's decisionmakers," and then requiring, "in explicitly mandatory language," that if the substantive predicates are met, a particular outcome must follow.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461-64 (1989).  An interest of "real substance" will generally be limited to freedom from restraint that imposes "atypical

and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence," Sandin, 515 U.S. at 484, 487.

There is some uncertainty as to whether Sandin has eliminated the requirement that state law narrowly restrict the power of prison officials to impose the deprivation and instead requires only that there be an interest of real substance to determine that an inmate has a right to due process before being deprived of that interest. See Sandin, 515 U.S. at 481-84; see also Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) ("focus of the liberty interest inquiry is whether the challenged condition imposes an atypical and significant hardship"); Neal v. Shimoda, 131 F.3d 818, 829 (9th Cir. 1997) (looking only to whether the deprivation suffered is an atypical and significant hardship on the inmate, and not to statutory language). While there may be some uncertainty as to whether the court needs to find mandatory language creating the liberty interest, there is no uncertainty at all that an atypical and significant hardship or an inevitable effect on the duration of confinement must exist to find that a liberty interest is protected by the Due Process Clause.  Sandin made clear the need for an atypical and significant hardship and the Supreme Court reiterated its adherence to Sandin's rule in Wilkinson v. Austin, 545 U.S. 209, 222-24 (2005).  Whether the due process analysis after Sandin has two prongs – i.e., (1) an atypical and significant hardship/inevitable effect on the duration of confinement and (2) a state-created interest due to mandatory language – or just one prong, it is beyond dispute that at least the first prong is required.

Valentine's claim falls on the first prong of the Sandin test.  Where, as here, the conditions of confinement did not change at all, there was no imposition of a restraint that imposed an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  The presence of the record of the dismissed disciplinary decision also did not inevitably affect the duration of Valentine's confinement.  Any possible effect of a disciplinary charge on a life inmate's later parole decision is too speculative to say that the decision has the inevitable effect on the duration of confinement that is necessary for federal due process protections to attach.  See Sandin, 515 U.S. at 487.  Valentine's claim fails

1  because he was not deprived of an interest of real substance.

2  Although the claim is dismissed for failure to state a claim upon which habeas relief may be granted, it also appears that the claim may be moot. Valentine's exhibit 95 (sandwiched between pages 16 and 17 of his amended petition) is page 65 of the transcript of the January 15, 2009 BPH hearing. On that page, a BPH commissioner stated that Valentine received his last CDC-115 (i.e., rule violation report) on July 1, 1996, and his last CDC-128 on July 9, 2003. The omission of any mention of a December 12, 2004 rule violation report indicates that the report had been removed from Valentine's file or at least had been marked to reflect the dismissal of the disciplinary charge.

B.  <u>State Court Error Claim</u>

The second claim in Valentine's habeas petition is that the Monterey County Superior Court made an erroneous finding on a habeas petition Valentine filed in that court concerning his prison disciplinary record. As this court explained when it dismissed the original petition with leave to amend, the claim is not actionable. Errors in the state post-conviction review process are not addressable through federal habeas corpus proceedings. <u>See</u> <u>Ortiz v. Stewart</u>, 149 F.3d 923, 939 (9th Cir. 1998). Challenges to such errors do not generally represent an attack on the prisoner's detention and therefore are not proper grounds for habeas relief. The claim is dismissed without leave to amend.

**CONCLUSION**

For the foregoing reasons, this action is dismissed for failure to state a claim upon which relief may be granted. The clerk shall close the file.

IT IS SO ORDERED.

DATED: June 18, 2010

_____
Marilyn Hall Patel
United States District Judge